## Spencer v. Commonwealth.

(Decided March 7, 1922.)

## Appeal from Clark Circuit Court.

1. Criminal Law—Wounds Inflicted in One County and Victim Dies in Another—Venue.—Where a mortal wound is inflicted in one county, and the victim dies of the effects of the wound in another county, the courts in either county have jurisdiction of the offense, and if before an arrest is made an indictment is returned in either county, the jurisdiction to try the offender is fixed where the indictment is returned.

2. Criminal Law—Venue.—Where a mortal wound is inflicted in one county, and the victim dies in another, before an indictment is returned in either county, the exclusive jurisdiction to try the offender will be fixed in the county in which he is first arrested.

3. Criminal Law—Venue.—Where the jurisdiction of an offense may be in either of two or more counties, and an indictment is returned in one of the counties, the jurisdiction to try the offender upon the indictment will not be defeated by prior proceedings in another county which were not in good faith, and wherein the offender and the officers appear to collude to have enabled the offender to select the tribunal to try him, and to defeat jurisdiction in the former county where the prosecuting officials are in good faith attempting to fix it.

4. Criminal Law—Indictment and Information—Variance.—Where each of two counties has jurisdiction of an offense, as where a mortal blow is given in one and death results from it in the other, and an indictment is returned in one of the counties, wherein it is alleged the offense was committed in that county, evidence may be heard as to the parts of the offense committed in the other county, and this will not constitute a fatal variance.

5. Homicide—Dying Declarations.—A declaration made by the victim of a homicide as to who committed it and the circumstances of it, just preceding his death and under a sense of impending death and speedy dissolution, is competent evidence upon the trial of the slayer.

C. F. SPENCER and J. D. ATKINSON for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice Hurt—Affirming.

The appellant, Boyd Spencer, was indicted in the Clark circuit court, for the crime of wilful murder, and when tried, was found guilty of voluntary manslaughter by the jury, and his punishment fixed at imprisonment for a term of ten years, and a judgment followed in accordance with the verdict of the jury. His motion for a new trial was overruled, and he has appealed.

A reversal of the judgment is sought upon four grounds, wherein it is insisted that the trial court erred to the prejudice of the substantial rights of the accused, as follows:

(1) In overruling the plea in abatement to the indictment based upon the alleged want of jurisdiction of the court.

(2) In overruling the motion of the accused for a directed verdict in his favor, because of variance between the allegations of the indictment and the evidence offered in support of it.

(3) In the admission of incompetent testimony against accused, to which he objected at the time, and saved an exception.

(4) In instructing the jury.

(a) The ground upon which the plea in abatement was based was that the Clark circuit court did not have jurisdiction of the offense, nor of the person of the accused for the offense, charged in the indictment, but upon the other hand that the exclusive jurisdiction to try the offense was in the Powell circuit court. The facts determining the question had been offered in evidence upon a hearing upon the return of a writ of *habeas corpus* before the circuit judge, and it was agreed by the parties that such evidence should be considered as if heard upon the plea in abatement, and was for that reason incorporated in the bill of exceptions. This evidence conduced to prove the following facts: On August 16, 1921, the accused shot Vernon Bryant, while both were in Powell county, inflicting a wound which proved to be fatal. Bryant was at once conveyed from Powell county to a hospital at Winchester in Clark county where he died about six o'clock a. m. on the following day, or the 17th day of August. About seven o'clock a. m. on the latter day, upon an affidavit being presented to him setting out the facts of the homicide, the county judge of Clark

county issued a warrant for the apprehension of Spencer, charging him with the crime of murder, by shooting Bryant in Powell county, and from the effects of which the victim died thereafter in Clark county. This warrant was directed to any sheriff, coroner, constable or jailer, directing him to arrest the accused, and to bring him before the county judge of Clark county, to be dealt with in accordance with the law. The warrant was forthwith conveyed to Powell county and delivered to the jailer of that county, between the hours of ten and ten-thirty a. m., for service upon the accused. Between twelve o'clock and a half hour, thereafter, on the same day, the accused went to Stanton, the county seat of Powell county, and surrendered to the jailer. Although the jailer took custody of the accused, he says that he did not execute the warrant upon him, but retained it in his possession, until the sheriff returned to Stanton on the same day, when he delivered it to the sheriff, or one of his deputies. The sheriff or his deputy, which ever it was to whom the warrant was delivered, instead of executing it, took it to the county attorney between one and one-thirty o'clock p. m. The county attorney made a copy of the warrant and subscribed the name of the county judge of Powell county to the copy, and delivered it to the deputy, who went to the jail where the accused was in custody, and read it to him, having then in his hands both the valid warrant issued by the county judge of Clark county, and the spurious one issued by the county attorney of Powell. The deputy sheriff then returned the warrant issued by the county judge of Clark county to him endorsed: "This man already taken into custody by Powell county authorities." Previous to these happenings, and at about nine o'clock a. m. on the same day, the county attorney of Powell county had written out a warrant charging the accused with malicious shooting and wounding, subscribed the name of the county judge to it, and delivered it to the sheriff, but this warrant was never executed, nor pretended to be executed. After the deputy had read to the accused the warrant issued by the county attorney of Powell county, by subscribing the name of the county judge of that county to it, the county judge and county attorney were notified and an examining trial was had before the county judge of Powell county on the 20th day of August, and an order was made requiring the accused to answer the charge before the Powell circuit court at its November term thereafter, and the accused

was admitted to bail in the sum of $2,000.00, and executed bond to comply with the order of the county judge.

On the 21st day of September, an indictment was returned in the Clark circuit court accusing the appellant of the crime of murder, and a bench warrant for his arrest sent to the sheriff of Powell county. This warrant the sheriff returned with the endorsement that the accused could not be found, as he was then not in the county. Thereafter an alias bench warrant was issued upon the indictment, which the sheriff of Powell county executed on November 21st, by arresting the accused, who was then in attendance upon the Powell circuit court, in obedience to his bond. The accused sued out a writ of *habeas corpus* against the sheriff to require his release, but upon its return before the circuit judge, who was then in the county, and, after a hearing, the writ was dismissed, and then the accused executed bond for his appearance to answer the indictment. No indictment has ever been returned in the Powell circuit court against accused for the alleged crime, it appearing that the Commonwealth's attorney advised the grand jury of the Powell circuit court to pursue that course at the November term, as an indictment for the crime was already pending in the Clark circuit court.

The question as to whether the Clark circuit court had jurisdiction to take and try the accused, under the facts, must be conceded to be one of difficulty, and must be determined by an application of such facts to the provisions of section 1147, Kentucky Statutes, and section 24, Criminal Code. Section 1145, Kentucky Statutes, provides that all offenses shall be tried "in the courts or by the tribunals of that county or city having jurisdiction of them in which they were committed, except in cases otherwise provided for." Section 1147, *supra,* relates to a class of cases "otherwise provided for" and provides: "If a mortal wound or other violence or injury inflicted, or poison be administered in one county or corporation, and death ensues in another, the offense may be prosecuted in either."

Under the provisions of this statute there can be no doubt if a mortal wound is given in one county and death results from it in another county, the courts in either have jurisdiction to take and try the offender. Hargis v. Parker, 27 R. 441; Commonwealth v. Jones, 118 Ky. 889; Jackson v. Commonwealth, 100 Ky. 239. In line with

the provisions of the above statute, are the requirements of section 21, Criminal Code, which provides:

"If an offense be committed partly in one county and partly in another county, or if acts and their effects constituting an offense occur in different counties, the jurisdiction is 'in either county.'"

These statutes have been held not violative of section 11 of the Constitution, as the language therein providing that an offender shall be tried by a jury of the vicinage means a jury in the neighborhood of the place of the commission of the crime, or such part of it as may have occurred in the county. Commonwealth v. Jones, *supra;* Hargis v. Parker, *supra.*

When the courts of each of two or more counties have jurisdiction to try the offender, there must, of course, be a way of determining which shall do so, as he can not be tried and punished, or tried and acquitted upon the charge, but one time. To supply this necessity, section 24, Criminal Code, was enacted, and which provides:

"If the jurisdiction of the offense be in two or more counties, the defendant shall be tried in the county in which he is first arrested, unless an indictment for the offense be pending in another county."

Hence, it would seem that if an indictment is returned against the offender in either county having jurisdiction of the offense, before he is arrested upon the charge the exclusive jurisdiction to try it attaches to the courts of that county, regardless of where the offender may be afterward arrested, and it is only before an indictment has been returned in either county, that the place of the arrest fixes the jurisdiction. The defendant cannot complain of which county takes jurisdiction, and as was said in Massie v. Commonwealth, 90 Ky. 485, the statute was not made for the benefit of the offender, but to determine the jurisdiction in which he should be tried, and it is very apparent that section 24, *supra,* must not in all cases be literally construed, since it would result oftentimes in an absurdity. Hence the term "in the county in which he is first arrested" must be construed to mean, that, if the offender is arrested upon process, that the jurisdiction exclusively attaches to the courts of the county from which the process issues, under which the offender is first arrested. Otherwise, if no prosecution is instituted in one of the counties having jurisdiction, or if in such county the authorities refuse to prose-

cute or connive at the crime, the offender could remain in that county so as to avoid being arrested elsewhere, and escape the consequences of his crime, although a prosecution might be instituted in another county having jurisdiction. To carry this doctrine of diligence to its logical conclusion, if before an indictment is returned, an officer has in his hands at the same time, process for the arrest of the offender for the same offense from two or more counties having jurisdiction, he should execute first the process which came to his hands, or was issued first. Of course, in cases of felony, an arrest may be made without process, if the arresting party has reasonable grounds to believe that the arrested party has committed a felony, and in such a state of case, the arrest would be as effective to give jurisdiction as if made upon a warrant, but the officer with a warrant in his hands can not, in good faith, disregard the warrant and arrest, as if he had no process, and thus establish jurisdiction in the county where he made the arrest, and defeat the attaching of jurisdiction of the person of the offender in the county from which the warrant issued. In the instant case, no indictment has ever been returned in Powell county, but an indictment was returned in Clark, and appellant was arrested upon a bench warrant issued upon that indictment, but not until November 21st. The proceedings in Powell county, by which the appellant was taken into custody by an officer with the warrant from Clark county in his pocket, and thereafter was pretendedly arrested upon a warrant issued by the county judge of Powell county, but which was in fact no warrant at all, and that by an officer with the valid Clark county process in his pocket, and thereafter an examining trial and the holding of the accused under bond, for his appearance to answer before the Powell circuit court, occurred before the indictment was returned in Clark county, and the question now is whether these proceedings in Powell county were sufficient to fix the exclusive jurisdiction of the person of the accused in the Powell Circuit Court, or whether the return of the indictment in Clark county and the arrest of the offender upon a bench warrant upon that indictment, gave jurisdiction to the Clark circuit court. It turns upon whether the proceedings in Powell county were in good faith, because the Commonwealth cannot be bound by the acts of its agents, unless they were in good faith. They could not collude with the alleged offender to enable him to select a court to try him,

and to defeat the right of the prosecuting officers, acting in good faith, to fix the jurisdiction elsewhere in the interest of a fair trial, and bind the Commonwealth. This principle has been consistently adhered to by this court. Carrington v. Commonwealth, 78 Ky. 83; Hargis v. Parker, *supra.*

It will be observed, in the instant case, that the accused sought to have himself arrested in Powell county, and apparently succeeded in doing so, by delivering himself to the jailer, who, with a warrant from Clark county in his pocket, says that he failed to execute it, as he should have done; that this warrant was delivered to the sheriff or his deputy, and whichever it was, failed to execute it, but went and presented it to the county attorney, who to furnish an excuse for not executing it, and in an attempt to prevent the jurisdiction of Clark county exclusively attaching, and in an endeavor to fix the jurisdiction in Powell county, prepared a warrant and subscribed it with the name of the county judge of Powell county, and this nullity the deputy sheriff pretended to execute upon Spencer, and returned the valid warrant to Clark county with an endorsement that the authorities of Powell county had already taken jurisdiction of the offender, and then an examining trial was had of the defendant upon the charge made in the spurious warrant. These proceedings bear strong earmarks of a collusion at least between the jailer, deputy sheriff, sheriff and county attorney upon the one side, and the defendant upon the other, to assist him in selecting the jurisdiction to try him and to defeat a jurisdiction, which without these efforts, would have otherwise exclusively attached and which had already been set in motion. In Hargis v. Parker, *supra,* wherein the victim was mortally wounded in Breathitt county and died from the effects of the wounds in Fayette county, and thereafter the grand jury in the latter county indicted certain parties as accessories before the fact to the murder, and the defendants insisted that because warrants had been issued against them in Breathitt county, an examining trial had, and they were held by the examining court for their appearances to answer the charges before the Breathitt circuit court, and had executed bonds so to do, before the indictment was returned in Fayette county, the exclusive jurisdiction to try them was fixed in Breathitt county, and although the grand jury in Breathitt county returned indictments against them (but after the indictment in Fayette

county), this court held that the proceedings in Breathitt, before the indictment there, were fraudulent and collusive and did not oust the jurisdiction of the Fayette circuit court, which attached when the indictment was there found, saying:

"In applying that decision (Carrington v. Commonwealth, *supra*) to this case, it follows *a fortiori,* that one accused of a crime cannot procure himself to be arrested and bound over, under form of law, to give jurisdiction to a county of his preference, in fraud of the right of the prosecuting officers, acting in good faith, to fix it elsewhere, if they choose to do so, in the interest of a fair trial." Therefore the court was not in error in denying the plea in abatement.

(b) The indictment upon which the accused was tried, contained the averment that the offense charged in it was committed in Clark county. When the evidence was being introduced, the accused objected to the introduction of the evidence showing the shooting and mortally wounding to have taken place in Powell county, and at the conclusion of the evidence for the Commonwealth, as well as all the evidence, moved the court to peremptorily instruct the jury to find a verdict in his favor upon the ground that there was a variance between the allegations of the indictment and the evidence, and the action of the court in overruling this motion, he now insists was prejudicial error.

Section 124, Criminal Code, is appealed to, and it is insisted that in as much as the statute contained in that section requires that an indictment shall be direct and certain, as to the county in which an offense is committed, that to sustain it, the evidence should be direct and certain, and prove that the offense was committed in the county alleged, and the rule applied in Parker v. Commonwealth, 12 Bush 191, is invoked. Where all the acts and consequences constituting a crime occur in one county, doubtless the rule in Parker v. Commonwealth, *supra,* should have literal application, but it should not be overlooked that death is an essential element of murder, and not a mere incident of it, and this essential element occurred in the instant case in the county of Clark, and the narration of the acts occurring in Powell county, which made up the other features of the crime, was but a continuation of the description of the complete offense, and hence the evidence of the crime necessarily showed that death, an essential element of it occurred where the

indictment laid the crime. At the common law the averment of the place of death was essential to the validity of an indictment for murder, and as essential as any other allegation in regard to it, but section 1147, *supra,* bestows jurisdiction of the offense upon the courts of the county wherein the death occurred, and it is insisted that such being the fact the acts of violence constituting a part of the murder, where the violence was committed in one county and the death in another, is in contemplation of law perpetrated in the county where the death occurred when the offender is indicted in the county, where the death occurred. It will be observed that in Parker v. Commonwealth, *supra,* all of the acts and all of their consequences occurred in one county and in a county other than that in which the indictment laid the crime. The requirement of section 124, *supra,* that the indictment must be direct and certain, as to the county in which the offense was committed, has its necessity in three purposes; one and the chief one is to show the jurisdiction of the court over the offense, (2) to enable an indicted person to know of what he is accused and to prepare his defense, and (3) to make the trial upon an indictment a bar to another trial. If the evidence proves that the death occurred in the county wherein the indictment was returned, it proves the jurisdiction of the court, as under the provisions of section 1147, *supra,* when it is proved that the death occurred in the county from felonious violence, either there or elsewhere in the state, the jurisdiction of the court is established. It would be absurd to say that one indicted for the crime of murder by feloniously shooting another in one county, and the death followed in another, that such indictment would not apprise him of the crime for which he was to be tried, from the fact that it charged him with the acts and consequences necessary to make the complete offense as having all occurred in the county where the crime became complete. Further, there could be no question that such trial would be a complete bar to another trial for the same crime, since all the elements of the crime were proven upon the trial. We are not without authority in holding that, although the indictment charged that the complete offense was committed in Clark county, such acts as conduced to the death and were perpetrated in another county, can be proven under the indictment, without it resulting in a variance fatal to a conviction. In other jurisdictions having a statute similar to section 1147,

*supra,* it has been held that the offender may be prosecuted either in the county where the mortal wound was given or where the victim died, and the crime may be charged in the indictment to have been committed in its entirety in the county where the indictment was found. Johnson v. Steele, 47 Miss. 674; Coleman v. State, 83 Miss. 290; State v. Jones, 38 La. Ann. 792. Such was the instant case and the necessity of proving the acts of violence in Powell county to make up the complete offense, did not amount to a fatal variance. A similar situation is presented when one is indicted in a county into which he carries property, that he has stolen in another county, he may be charged in an indictment with having stolen the property in the county to which he has carried it, but under an indictment of this kind it is allowable to prove the place, where the felon originally took and carried away the property, and the proof of the offense does not amount to a variance, although the charge is that he committed the felony in the county where the indictment was found. In the interest of clarity, it would have been better if the indictment had charged the acts as having occurred in Powell county, and the consequences in Clark county, but the fact that the entire crime was alleged to have been committed in Clark county, and the evidence proving a part of the essentials as having occurred in Powell county, if a variance it was not fatal to the prosecution, and not prejudicial, since the indictment showed the jurisdiction of the court, apprised the offender of the nature and cause of the accusation against him, and is a bar to any further prosecution.

(c) The incompetent evidence complained of was the admission of an alleged dying declaration of the victim of the homicide, which was made within an hour of his death. Before his declarations were admitted, it was proven from his expressions and condition, that he had given up all hope of life and was under a sense of impending death and speedy dissolution. The declarations consisted of statements as to who it was that shot him and the manner of the shooting, and contained nothing that the deceased could not have deposed concerning, if he had been a witness in court, and such declarations have invariably been held to be competent evidence. McHargue v. Commonwealth, 15 K. L. R. 323; Pennington v. Commonwealth, 24 K. L. R. 321; Fuqua v. Commonwealth, 24 K. L. R. 2204; Walston v. Commonwealth,

16 B. M. 15; Norfleet v. Commonwealth, 17 K. L. R. 1137, and Matthews v. Commonwealth, 89 Ky. 287.

(d)  The instruction complained of is one which explained to the jury the legal effect of the evidence concerning the acts committed in Powell county which went to make up the crime of homicide and which was completed by the death in Clark county, in view of the fact that the indictment charged the complete offense as having been committed in the latter county. For the reasons heretofore stated there seems to have been in this instruction nothing which could have been prejudicial to appellant's substantial rights.

The judgment is therefore affirmed.